Filed 6/13/24  P. v. Perkins CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LONNIE DONELL PERKINS,<br><br>    Defendant and Appellant. | D081795<br><br><br>(Super. Ct. No. CF9000) |


APPEAL from an order of the Superior Court of Imperial County, Poli Flores, Jr., Judge.  Affirmed.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Daniel Rogers and Lynne G. McGinnis, Supervising Deputy Attorneys General, Sharon L. Rhodes, Deputy Attorney General for Plaintiff and Respondent.

Lonnie Donell Perkins, who was convicted of first degree murder, appeals an order denying his petition for resentencing under former Penal

Code section 1170.95 (now section 1172.6)[1] based on changes to the felony murder rule and the natural and probable consequences doctrine (Sen. Bill No. 1437 (Stats. 2018, ch. 1015, § 4, eff. Jan. 1, 2019)).  He contends the court erroneously denied his petition without holding an evidentiary hearing and we should remand the matter for such a hearing because he sufficiently alleged that the jury instructions allowed the jury to impute to him the express malice of either his codefendant Danny Lewis or an unnamed third party.  He claims the aiding and abetting instructions did not require a finding that he acted with express malice.  We affirm the court's order.

FACTUAL AND PROCEDURAL BACKGROUND[2]

A.  *Facts*

The facts are taken from this court's nonpublished opinion, *People v. Perkins*, D040244 (October 15, 2003), which we set forth for context only.  We do not rely on the factual summary in resolving this appeal.  (See *People v. Flores* (2022) 76 Cal.App.5th 974, 988.)

On the evening of July 10, 2000, Perkins, an incarcerated gang member whose gang's signature color is orange, walked by the prison cell that the victim, Steven Kato Brown, shared with Anthony Hereford.  Perkins

---

[1]      Undesignated statutory references are to the Penal Code.  Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6, with no substantive change in text.  (Stats. 2022, ch. 58, § 10.)  We refer to the statute throughout as section 1172.6.

[2]      We grant the People's request for judicial notice of the record from Perkins's direct appeal, including our judicial opinion.  (Evid. Code, §§ 452, 459.)  It is appropriate for us to review the procedural history in deciding whether a defendant has filed a facially sufficient petition.  (*People v. Lewis* (2021) 11 Cal.5th 952, 971-972, *People v. Flores, supra,* 76 Cal.App.5th at p. 988.)

"hollered" at Hereford. In apparent reaction, Brown "went off" and started arguing with Perkins.

The next morning, Hereford went to the cell that Perkins shared with codefendant Lewis and apologized to Perkins for Brown's actions the previous night. Later that morning, Hereford telephoned Correctional Officer V. and said he was concerned about Brown's welfare because of the incident involving Brown, Perkins, Lewis and another inmate, Richard Hyder.

A few minutes later, Brown shouted, "Officer, officer!" Correctional Officer A. turned around and saw Brown, who was fatally stabbed. The officer yelled to all the inmates to get down on the floor immediately. Officer V. was in a control booth and saw that Perkins, Lewis and Hyder were the only inmates in the surrounding area. They defied the order by moving away from the area.

Officer A. later found two inmate-manufactured knives in the area near where Brown was stabbed. One was in a cart underneath a television and had a bent plastic handle that was mostly orange. Brown was the inmate closest to the cart. This knife tested positive for blood. The other knife also had an orange plastic handle. These knives could have been used to inflict Brown's wounds.[3] Brown's blood was found on Perkins's shorts.

An officer who searched several cells for scrape marks that are commonly associated with inmates sharpening weapons found such marks on the floor of Perkins's cell. The metal particles and powdery substances found

---

[3] In August 2000, Imperial County deputy sheriffs found a five-inch-long inmate-manufactured shank concealed in a seam of Perkins's boxer shorts. The weapon had an orange and black colored plastic handle, and was similar to the ones found at the crime scene.

there were consistent with those used to make the two knives found at the crime scene.

In April 2002, after a jury convicted Perkins of first degree murder (§§ 187, subd. (a), 189), he admitted five prior conviction allegations (§§ 667.5, subd. (b), 667, subds. (b)-(i), 1170.1, subd. (c), 1170.12, subds. (a)-(d)).

The court sentenced Perkins to 78 years to life in prison: 25 years to life for the murder conviction, tripled to 75 years to life under the "Three Strikes" law, plus three consecutive one-year terms for his three nonstrike prior convictions.

The jury could not reach a verdict as to codefendant Lewis, and the court declared a mistrial as to him.

B. *Trial and Conviction*

The defense's theory of the case, presented in closing arguments, was that Perkins was innocent and other individuals, who had the opportunity to do so, likely committed the murder.

4

The court instructed the jury on aiding and abetting with CALJIC Nos. 3.00[4] and 3.01.[5] It also gave a special instruction on third party culpability.[6]

Further, the court instructed the jury on deliberate and premeditated first degree murder with CALJIC No. 8.20: "This instruction applies as to defendant Lonnie Perkins. [¶] All murder which is perpetrated by any kind of willful, deliberate, and premeditated killing with express malice aforethought is murder of the first degree. [¶] The word 'willful,' as used in this instruction, means intentional. [¶] The word 'deliberate' means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action. The word

_____

[4] CALJIC No. 3.00 provided: "Persons who are involved in committing or attempting to commit a crime are referred to as principals in that crime. Each principal, regardless of the extent or manner of participation is equally guilty. Principals include: [¶] 1. Those who directly and actively commit or attempt to commit the act constituting the crime, or [¶] 2. Those who aid and abet the commission or attempted commission of the crime."

[5] CALJIC No. 3.01 provided: "A person aids and abets the commission of a crime when he or she, [¶] 1. With knowledge of the unlawful purpose of the perpetrator and [¶] 2. With the intent or purpose of committing or encouraging or facilitating the commission of the crime, and [¶] 3. By act or advice aids, promotes, encourages or instigates the commission of the crime."

[6] The third-party culpability instruction provided: "You have heard evidence that a person or persons other than the defendants may have committed the offense with which the defendant is charged. It is not required that the defendant[s] prove this fact beyond a reasonable doubt. The defendants are entitled to an acquittal if the evidence raises a reasonable doubt in your minds as to the defendant[s'] guilt. Such evidence may by itself raise a reasonable doubt as to the defendants' guilt. However, its weight and significance, if any, are matters for your determination. If after consideration of this and all of the other evidence, you have a reasonable doubt that the defendants committed this offense, you must give the defendants the benefit of the doubt and find them not guilty."

5

'premeditated' means considered beforehand. [¶] If you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is murder of the first degree."[7]

C. *Senate Bill No. 1437*

The Legislature approved Senate Bill No. 1437, which went into effect January 1, 2019. Senate Bill No. 1437 significantly limited the scope of the felony-murder rule and eliminated liability for murder under the natural and probable consequences doctrine through two key provisions. First, it amended section 189 so that "[d]efendants who were neither actual killers nor acted with the intent to kill can be held liable for murder only if they were 'major participant[s] in the underlying felony and acted with reckless indifference to human life[.]' " (*People v. Strong* (2022) 13 Cal.5th 698, 708.) Second, it amended section 188 to provide that when the felony-murder rule does not apply, a principal in the crime of murder can only be convicted if he or she acted "with malice aforethought," and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

---

[7] The court also instructed the jury on unpremeditated second degree murder with CALJIC No. 8.30: "This instruction applies as to defendant Danny Lewis. Murder of the second degree is also the unlawful killing of a human being with malice aforethought when the perpetrator intended unlawfully to kill a human being but the evidence is insufficient to prove deliberation and premeditation." The court instructed the jury that this instruction also applied to Perkins for purposes of determining his guilt of the lesser included offense of second degree murder.

Senate Bill No. 1437 also created a resentencing procedure, which is now set forth in section 1172.6.  (Stats. 2018, ch. 1015, § 4.)  It provides:  "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts . . . ." (§ 1172.6, subd. (a).)

A petitioner initiates the process by filing a declaration averring that: (1) a charging document was filed against the petitioner allowing the prosecution to proceed under a theory of felony murder, natural and probable consequences murder, murder under another theory by which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine; (2) the petitioner was convicted of murder, attempted murder, or manslaughter following a trial, or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder; and (3) the petitioner could not presently be convicted of murder or attempted murder because of the changes to the murder laws that were implemented by Senate Bill No. 1437.  (§ 1172.6, subds. (a)(1)-(3), (b)(1).)  If the petitioner states a prima facie case for relief, the court must issue an order to show cause and schedule an evidentiary hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction, recall the sentence, and resentence the petitioner on any remaining counts.  (*Id.,* subds. (c), (d)(1).)

At the hearing, the prosecution bears the burden of proving beyond a reasonable doubt that the petitioner is guilty of murder or attempted murder under the amended laws. (§ 1172.6, subd. (d)(3).) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid.*)

D. *The Resentencing Hearing Proceeding*

In 2022, Perkins filed a petition for resentencing under section 1172.6. The court appointed counsel for him.

The People opposed the petition, arguing Perkins was ineligible for relief because he was not charged or convicted of first degree murder on a felony murder theory or under the natural and probable consequences doctrine. The People further contended that this court on direct appeal concluded Perkins either committed the crime himself or aided and abetted others in its commission.[8]

Perkins argued in reply that the petition set forth a prima facie case for relief. He claimed that our opinion on direct appeal stated the trial court had instructed the jury on multiple theories of liability, including the natural and

---

[8] We rejected Perkins's sufficiency of the evidence challenge on direct appeal: "Here, substantial evidence supports the jury's finding that Perkins was criminally liable for Brown's murder. That Perkins had a motive is shown by evidence that he had argued with Brown the night before Brown's murder. . . . During closing statements, the prosecutor cited evidence showing that Brown's cellmate, Hereford, believed that 'disrespect' was the cause of Brown's murder." After summarizing the testimony set forth above, we concluded, "The foregoing circumstantial evidence is substantial and supports Perkins's conviction."

probable consequences doctrine.[9] He also argued he was entitled to relief because the versions of CALJIC Nos. 3.00 and 3.01 given at trial misstated the law. He cited *People v. Nero* (2010) 181 Cal.App.4th 504, 518 for the proposition the jury instructions were "misleading because a direct perpetrator and an aidor/abettor [*sic*] may have different mental states."

In opposing the petition, the People argued the trial court never instructed the jury on felony murder, the natural and probable consequences doctrine, or any other theory that imputed malice to Perkins based solely on his participation in the crime. Rather, by convicting him of first degree murder, the jury necessarily found he was either the actual killer or aided and abetted the actual killer with express malice and premeditation.

The court denied the petition because the jury was not instructed with CALJIC No. 3.02 regarding natural and probable consequences. Further, it concluded that the fact the trial court instructed the jury on aiding and abetting with CALJIC No. 3.01 did not make Perkins eligible for relief.

DISCUSSION

Perkins contends, based on the court's instructions with CALJIC No. 300 regarding the definition of a principal, CALJIC No. 301 on aiding and abetting, and on third party culpability, that the jury could impute guilt to him based on the conduct of others: "These instructions allowed the jury to impute either the express malice of co[ ]defendant Lewis or the unnamed third party to [Perkins] based on [his] participation in an underlying assault, as the aiding and abetting instructions did not require a finding that [he] acted with express malice. All that was required was that he intended to aid

---

9     At the hearing on the motion, the court concluded that at trial, the jury was not instructed regarding the natural and probable causes doctrine. We agree with that finding.

9

and abet Lewis or the third party in committing a crime.  Thus, the jury was essentially told that it could convict [him] of willful, deliberate, and premediated [*sic*] attempted murder based upon his aiding and abetting Lewis or the third party in an underlying crime."

## I. *Applicable Law*

The trial court's prima facie inquiry under section 1172.6 is "limited." (*People v. Lewis, supra,* 11 Cal.5th at p. 971.)  "Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." ' [Citations.]  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' " (*Ibid.*) Further, it must refrain from " 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at p. 972.)  However, "the court may deny the petition at the prima facie stage if the record of conviction discloses that the petitioner is ineligible for relief as a matter of law." (*People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 931.)

"We independently review a trial court's determination on whether a petitioner has made a prima facie showing." (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

## II. *Analysis*

Under the court's instruction with CALJIC No. 8.20, which applied solely to Perkins, the jury was required to find that Perkins acted with express malice before convicting him of first degree murder.  We presume jurors understand and follow the instructions they are given, including the written instructions.  (See *People v. Buenrostro* (2018) 6 Cal.5th 367, 431.)

10

The jury did not reach a verdict on the second degree unpremeditated murder charge against Lewis. The record of conviction therefore establishes the jury necessarily decided Perkins was the killer or aided and abetted the murder. Perkins failed to make a prima facie showing that he was entitled to relief because the record of conviction demonstrates that he was convicted of first degree murder as a direct perpetrator or an aider and abettor.

Further, as stated, the court did not instruct the jury on the natural and probable consequences doctrine. "[I]f the record shows that the jury was not instructed on either the natural and probable consequences or felony-murder doctrines, then the petitioner is ineligible for relief as a matter of law." (*People v. Harden, supra,* 81 Cal.App.5th at p. 52.) Rather, the court instructed the jury regarding aiding and abetting with CALJIC Nos. 3.00 and 3.01. Contrary to Perkins's contention, these instructions did not allow a jury to impute to him either the express malice of his codefendant or the unnamed third party based on his participation in the underlying incident. In fact, taking the instructions as a whole, and considering the jury convicted Perkins of first degree murder and failed to convict Lewis of second degree murder, it had to conclude Perkins acted with express malice. It therefore did not impute the conduct of Lewis or any third party to Perkins.

The instruction regarding third party culpability expressly stated that it was for the jury to decide "the weight and significance" of any evidence that another person may have committed the offense. That instruction added, "If after consideration of this and all of the other evidence, you have a reasonable doubt that the defendants committed this offense, you must give the defendants the benefit of the doubt and find them not guilty." By convicting Perkins, we must assume the jury followed the instruction and concluded beyond a reasonable doubt that he committed first degree murder.

11

(*People v. Cortes* (2022) 75 Cal.App.5th 198, 205-206.)  Based on the above, the court did not err by concluding Perkins was ineligible for section 1172.6 relief as a matter of law.

Perkins acknowledges that "the jury *was* instructed with deliberate and premeditated murder as to [him] as the only theory of first degree murder [with CALJIC No. 8.20] and unpremeditated murder of the second degree as to co[ ]defendant Lewis [with CALJIC No. 8.30]."  Nonetheless, he relies on *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*) and *People v. Rivera* (2015) 234 Cal.App.4th 1350 (*Rivera*) for his claim that based on the instructions, "the jury may have imputed the third party's premediated [*sic*] and specific intent to kill to [him]."  However, *Langi* does not apply here since that decision involves implied malice murder, which does not require the jury to find an intent to kill.  (*People v. Coley* (2022) 77 Cal.App.5th 539, 547; *People v. Powell* (2021) 63 Cal.App.5th 689, 711-712; see also *People v. Lee* (2023) 95 Cal.App.5th 1164, 1191.)

Nor does *Rivera*, *supra,* 234 Cal.App.4th 1350 compel a different result. In that case, the trial court instructed the jury on the natural and probable causes doctrine.  (*Id.* at p. 1356.)  The Court of Appeal ruled there was instructional error in light of the California Supreme Court's decision in *People v. Chiu* (2014) 59 Cal.4th 155, 158-159, which held that a defendant who is an aider and abettor cannot be convicted of first degree murder under a natural and probable consequences theory.  The *Rivera* court concluded: "Given these reasons articulated by the California Supreme Court for limiting aider and abettor liability under the natural and probable consequences doctrine to second degree murder and the analogy between aiding and abetting and conspiracy that we have explained, we hold that the trial court here erred in instructing the jury it could reach a verdict of first

degree murder for [a codefendant] if it found that the target crime of the uncharged conspiracy was discharging a firearm at an occupied vehicle and that first degree murder was a natural and probable consequence of that target crime." (*Rivera,* at p. 1357.) By contrast, here, the court instructed the jury with CALJIC No. 8.20 on first degree murder based on deliberate and premeditated actions as to Perkins only.

## DISPOSITION

The order denying Perkins's section 1172.6 petition is affirmed.


O'ROURKE, Acting P. J.

WE CONCUR:


DATO, J.


BUCHANAN, J.